**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED
2018 OCT -9 P 4: 41

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| ALLISON P. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:18-cv-870 |
| | ) | |
| CHILTON COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| TOMMY GLASSCOCK, | ) | TRIAL BY JURY |
| LORI PATTERSON, | ) | |
| LINDA HAND, | ) | |
| JOE MIMS, | ) | |
| KEITH MOORE, | ) | |
| PAM PRICE, | ) | |
| JAMES SHANNON, | ) | |
| CURTIS SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), 1367 (supplemental jurisdiction); 29 U.S.C. § 216(b) (Fair Labor Standards Act); 42 U.S.C. §§ 1983 (Civil Rights Act), 2000(e) (Title VII of the Civil Rights Act of 1964, as amended). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by these statutes and the Fourteenth Amendment of the United

States Constitution, providing relief against discrimination, harassment, and retaliation in the workplace. Plaintiff invokes supplemental jurisdiction over her state law claims.

2. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (Exhibit A). Plaintiff received a Notice of Right to Sue from the U.S. Department of Justice Civil Rights Division (Exhibit B) before timely filing this Complaint. Plaintiff has exhausted all administrative remedies prerequisite to the filing of this lawsuit.

II. PARTIES

3. Plaintiff Allison P. Smith (hereinafter "Plaintiff" or "Smith") is a United States citizen and resident of the State of Alabama.

4. Defendant Chilton County Board of Education (hereinafter "CCBOE") was Smith's employer at all times relevant to this Complaint. The CCBOE is located in the Middle District of Alabama.

5. The CCBOE employs 15 or more employees.

6. The CCBOE is a recipient of federal funds.

7. Defendant Tommy Glasscock (hereinafter "Glasscock") was the Superintendent of the CCBOE in the Middle District of Alabama at all times relevant to this Complaint.

8.      Defendant Lori Patterson (hereinafter "Patterson") was President and/or a member of the CCBOE in the Middle District of Alabama at all times relevant to this Complaint.

9.      Defendant Linda Hand (hereinafter "Hand") was an officer and/or member of Chilton County Board of Education in the Middle District of Alabama at all times relevant to this Complaint.

10.     Defendant Joe Mims (hereinafter "Mims") was an officer and/or member of the Chilton County Board of Education in the Middle District of Alabama at all times relevant to this Complaint.

11.     Defendant Keith Moore (hereinafter "Moore") was an officer and/or member of the Chilton County Board of Education in the Middle District of Alabama at all times relevant to this Complaint.

12.     Defendant Pam Price (hereinafter "Price") was an officer and/or member of the Chilton County Board of Education in the Middle District of Alabama at all times relevant to this Complaint.

13.     Defendant James Shannon (hereinafter "Shannon") was an officer and/or member of the Chilton County Board of Education in the Middle District of Alabama at all times relevant to this Complaint.

14.     Defendant Curtis Smith (hereinafter "C. Smith") was an officer and/or member of the Chilton County Board of Education in the Middle District of

Alabama at all times relevant to this Complaint.

15.    Smith brings this lawsuit against Defendants in their official and individual capacities.

III.    STATEMENT OF FACTS

16.    Plaintiff Smith worked for the CCBOE from February 2015 until her termination on April 18, 2017.

17.    In February 2015, Defendant Lori Patterson, CCBOE President and personal friend of Superintendent Glasscock, contacted Smith about working for the Board as Glasscock's Assistant.

18.    Patterson said they would have to hire someone in the position who was not "too pretty."

19.    At the time, Smith was overweight and did not color her fully-gray hair.

20.    Smith thought Patterson's comment was odd, but Smith needed the job and salary.

21.    Smith interviewed with Glasscock for the position.

22.    Smith expressed to Glasscock that she had begun working as a real estate agent and desired to keep that as a second job.  Glasscock told Smith he did not want his assistant to have an outside job.

23.    Smith gave up her real estate practice and began working for the

4

CCBOE in February 2015.

24.     The CCBOE classified Smith as a Secretary with a starting salary of approximately $ 39,000.

25.     Immediately after Smith was hired, Glasscock expressed to her that he was not interested in her performing the same secretarial work as the previous secretary.  Glasscock told Smith he wanted her to follow him so closely that she would run into him when he stopped.  Smith began performing duties Glasscock assigned her and worked closely with him on most days.

26.     Smith was responsible for most everything in the Superintendent office, from financial matters to personnel matters to legal matters.

27.     Smith is a licensed attorney in the state of Alabama.  Glasscock often bragged that Smith was his own personal lawyer.

28.     In March 2015, Glasscock assigned Smith Payroll Clerk and Board Clerk duties in addition to her enhanced "Secretary" duties.

29.     Smith had already worked many overtime hours in the secretary position without overtime compensation.

30.     Board President Patterson knew Glasscock intended to assign Smith the Payroll Clerk and Board Clerk duties.  Patterson advised Glasscock in Smith's presence that the change would require Board approval.  Glasscock replied that he was "not going to do that" and would have Smith "do whatever [he] wanted her to

do."

31.   Smith took on the additional Payroll Clerk and Board Clerk duties, which required her to work nights and weekends.

32.   The Board did not pay Smith the scheduled salary for those positions or the corresponding overtime.

33.   Board President Patterson called Smith at home one evening, telling Smith she should be leaving at 4:00 p.m. instead of 6:30 p.m.   Patterson commented that she often saw Smith's car in the office parking lot after hours.

34.   Smith advised Patterson that it was impossible for her to complete all of her assigned duties within a normal 40-hour workweek.  Patterson did nothing to ensure that Smith was receiving overtime compensation.

35.   Glasscock told Smith he would give her comp time in lieu of overtime pay because the Board would not pay overtime.

36.   Smith was rarely allowed to take the comp time.  Smith's comp time carried over multiple salary periods without ever being paid.

37.   Smith continued the extra Payroll Clerk and Board Clerk duties through January 2016 without the corresponding pay.

38.   In the summer of 2015, most of Smith's days were spent with Glasscock, either in his office or in hers.

6

39.    The summer staff at the central office was sparse in the summer. Smith often found herself having to work alone with Glasscock.

40.    Glasscock became very laid back in his demeanor with Smith. Glasscock began sharing personal details about his wife, including comments about their marital relationship and sex life.

41.    Glasscock commented about how other women "wanted" him.

42.    Glasscock commented on other women's physical characteristics, pointing out their "short skirts" or "big boobs."

43.    Glasscock commented to Smith about a female subordinate who had a volatile relationship with Glasscock.  Glasscock explained that the subordinate was just embarrassed because they had gone on a date, and the subordinate had tried to give him a blow job.

44.    Glasscock also told Smith that he previously dated a friend of Smith's. Glasscock said after he and the friend got through "fucking," the friend's mother would give him a "booty call."  Glasscock said he never knew which one he was going to be "fucking."

45.    Glasscock told Smith that part of her job was to try to keep him in line.

46.    Glasscock told Smith his wife was jealous of other women, but not Smith because she was just an "old gray-haired lady."

7

47.     Smith's workplace was permeated with Glasscock's gender-based and sexually-charged comments.

48.     Glasscock's conduct deeply embarrassed, humiliated, and demeaned Smith personally.

49.     Glasscock's comments also made Smith feel embarrassed and humiliated for the other female subordinates and women who were the subjects of Glasscock's sexual comments.

50.     Glasscock gave Smith several unwelcome hugs and would attempt to hug her on other occasions.  Smith would act uncomfortable, dodge his hugs, and rebuff his advances.

51.     On one occasion, Glasscock ordered Smith to get under his desk to fix his printer.  Smith complied, getting on her hands and knees, while Glasscock remained sitting in his desk chair.  Glasscock commented, "I wonder what people would think you were doing under there?"

52.     As Superintendent, Glasscock was the most senior official in Smith's workplace.

53.     Smith does not recall receiving an employee handbook, a sexual harassment policy during her employment.

54.     Smith discovered a sexual harassment policy after her termination that instructed employees to complain to the Superintendent (Glasscock, the harasser)

or the Assistant Superintendent. Smith performed the Assistant Superintendent role from November 2015 to April 2017 as discussed, *infra*.

55. During her employment, Smith complained in every way she knew how.

56. Smith complained to Willie Mae White ("White"), retired CCBOE Assistant Superintendent/Personnel Director, who worked part-time.

57. White told Smith it was common knowledge that Glasscock had affairs with two previous female subordinates before forcing one of them to resign.

58. White warned Smith not to "get suckered in and become his whore."

59. White told Smith not to discuss her complaints about Glasscock in Smith's office because it "may be bugged."

60. White also warned Smith not to go to an out-of-county meeting with Glasscock and suggested she call in sick instead.

61. To Smith's knowledge, White did nothing to pass along or address her complaints. Glasscock's discrimination and harassment continued.

62. Board President Patterson actually initiated contact with Smith on a couple of occasions to discuss Glasscock's behavior toward her. On one occasion, Patterson began venting frustration about Glasscock while he was not there, calling him a "bully." Ms. Smith responded about her own experiences with Glasscock, describing some of the discrimination and harassment she was experiencing.

Patterson did not offer any solutions, and just said, "Well, that's Tommy."

63.    Smith complained to three other CCBOE Administrators to no avail. One Administrator, Pam Harris, told Smith that she better not let Glasscock's wife hear about it, or she would go after her like she did his last assistant. To Smith's knowledge, none of the three administrators did anything to have Glasscock's conduct investigated or remedied.

64.    In the fall of 2015, Glasscock told Smith he was planning to terminate an Assistant Superintendent who went out on leave.

65.    Glasscock ordered Smith to take over the Assistant Superintendent duties.

66.    Smith asked Glasscock about salary, knowing that the current Assistant Superintendent was earning around $ 85,000.   Smith and Glasscock discussed that Smith's current salary was $ 39,000.

67.    Glasscock said he believed Smith should be making $ 55,000 in line with the newly-hired Assistant Chief School Financial Officer.

68.    Glasscock advised Smith that if she picked up the additional Assistant Superintendent duties, he would have no trouble getting her the $ 55,000 salary.

69.    Glasscock took Smith around to the offices of CCBOE administrators and announced that Smith was taking on the Assistant Superintendent role. Glasscock even announced the change at a principals meeting.

10

70. Smith relied on Glasscock's representations to her detriment.

71. Smith performed the Assistant Superintendent duties without ever receiving the corresponding pay or overtime.

72. Smith continued in the Assistant Superintendent role—in addition to her "Secretary" role—from November 2015 until April 18, 2017, the date of her termination.

73. Smith logged anywhere from 60-70 hours per week while performing those roles.

74. Glasscock told Smith she could not apply for overtime, since she was now in an administrative role.

75. Glasscock assumed the additional duties because she believed she would eventually receive a raise and would be working less directly with Glasscock.

76. Glasscock moved Smith's office to the back of the building. The office had access through a back door. Glasscock began frequenting Smith's office through the back door. Glasscock even mirrored Smith's window so no one could see inside.

77. Glasscock told Smith everyone was "jealous about their relationship" and how "close" they were. Glasscock told Smith he wanted to let others know "who [she] belonged with."

78.     Glasscock's comments and behavior continued to make Smith feel uncomfortable, offended, demeaned, and under Glasscock's singular control.

79.     In March 2016, CCBOE President Patterson called and asked Smith if she had purchased property "with a man." Patterson told Smith she was getting questions from other Board members about it.

80.     Several days later, Defendant Joe Mims, Board Vice-President, called Smith asking the same questions. Mims told Smith he had figured the cost of the subdivision lot and knew Smith had to have bought it with a man. Mims persisted with his intrusive questioning, saying the Board members had a right to know if Smith was "living in sin," since she was an unmarried woman.

81.     Smith complained about Mims' intrusive questioning to Patterson and Glasscock. To Smith's knowledge, neither Patterson nor Glasscock did anything to address Smith's complaint.

82.     Smith also complained to Allison Ellison, the Chief School Financial Officer. Ellison became visibly upset and shared that Mims had also offended her. According to Ellison, Mims entered her office, closed the door, and told her she needed to lose weight.

83.     To Smith's knowledge, no investigation was conducted by Patterson or Glasscock into Mims' conduct.

84.     In May 2016, Smith asked Glasscock about her raise. Smith told

12

Glasscock that if she did not receive the raise shortly, she would need to find a second job. Smith also told Glasscock that she could not continue working late nights and weekends on her salary.

85. Glasscock told Smith to be patient until the Assistant Superintendent who was on leave officially resigned. Glasscock gave Smith $ 100 dollars and told her that he cared about her.

86. Glasscock became close with another female subordinate employee. Glasscock showed Smith a text he received from the employee with a photo of her naked breasts. Glasscock said the employee had recently had breast implants. Smith was shocked and embarrassed by the text. Glasscock made Smith promise not to tell anyone, and said he would deny it if she did.

87. The CCBOE knew Glasscock was having the affair. Smith received a call from Board President Patterson questioning her about the affair. Smith told Patterson what she knew. Another Board member, Keith Moore, also questioned Glasscock about the affair. To Smith's knowledge, nothing was done to address the situation.

88. In June 2016, Mr. Glasscock met with the Board. After the meeting, Glasscock told Smith he could not get her the raise. Glasscock ordered her to continue performing work as the Personnel Director.

89. Defendants Patterson and Mims voted against Smith receiving the

13

raise or promotion. Patterson and Mims were the Board Members who asked whether Smith was "living in sin."

90.    Smith advised Glasscock that she could not continue performing the additional duties without compensation and that she wanted to go back to performing the Secretary duties for which she was hired.

91.    Glasscock refused to move Smith back to the front office.

92.    Smith began leaving on time more often instead of working overtime unpaid.

93.    Glasscock immediately became contentious and began threatening Smith's job.

94.    At some point, Glasscock brought Smith into his office and told her that she did not understand how much he cared for her and that he would do anything to protect her if Smith "met his needs."

95.    Glasscock repeated on several occasions after that that Smith just needed to meet his needs, and that she should know and anticipate his needs.

96.    Smith understood these comments as a threat that she would have to have sex with Glasscock to keep her job. Smith told Glasscock that she could not do that.

97.    Glasscock became more and more volatile toward Smith throughout August and September 2016.

14

98.   On September 30, 2016, Glasscock told Smith she should look for another job.

99.   On or about October 1, 2016, Glasscock came into Smith's office and began crying, telling Smith he loved her, and that she did not understand his feelings for her.   Smith was shocked and remained silent.   Glasscock tried to embrace Smith, but Smith withdrew.

100.   On or about October 6, 2016, Glasscock told Smith he did not want her to leave and gave her a new job description to review.   He said he would change Smith's job description and pay her a salary of $46,000 per year. Glasscock said he wanted things to go back the way they were, with them "running things" and with her "staying late," just the two of them.

101.   Smith told Glasscock that she could not agree to once again take on additional duties without being paid for them or being paid any overtime.

102.   Glasscock brought Smith in for several meetings after that.   Glasscock told Smith that if she did not agree to take on the additional job, he would fire her for insubordination.

103.   Smith told Glasscock she had 3 kids to feed and that she would have to do whatever duties he requested.   However, she would not be able to stay late without advanced notice because of her children.

104.   Glasscock became increasingly contentious toward Smith.

15

105. A short time later, Glasscock came to Smith's office late one afternoon and asked if they could "get back together." Glasscock also told her to remember that he owned a jewelry store. Smith tried to explain once again that their relationship was strictly professional.

106. Glasscock thereafter came to Smith's office and showed her a video of a monkey masturbating. Smith returned his phone and told him that was highly inappropriate. This clearly agitated Glasscock, who then commented that he knew Smith was "just trying to keep things professional only."

107. Smith's work environment remained hostile.

108. On January 12, 2017, Smith attempted to explain to Glasscock that she only cared about him as a boss, nothing more. Smith asked Glasscock to stop being mad at her, because she really needed her job.

109. Glasscock replied in a loud and angry voice that he felt like he was "getting a divorce." Glasscock then told Smith he "didn't need to fuck [her] anyway." Smith was startled by his comment. Smith immediately requested to be transferred to a new position. Glasscock told Smith she would have to get in and "drink his Kool Aide" or he was going to terminate her.

110. At the end of February 2017, Glasscock brought Smith into his office and told her she was not working out. Glasscock told Smith they live in a small community, and that if he heard of her telling negative things about him, he would

16

"go after" her.

111.   Glasscock requested Smith's resignation or said he would fire her.

112.   Glasscock sent Smith to payroll to find out when her official resignation day should be.

113.   On February 27, 2017, Smith submitted her resignation letter to the CCBOE, advising them that she was resigning under Glasscock's threats and duress with her final day being April 18, 2017.

114.   The CCBOE never interviewed Smith about her letter.

115.   The CCBOE did nothing to Smith's knowledge between February 27, 2017 and April 18, 2017 to investigate her final complaints.

116.   Smith received one raise during her employment, a State Educators' raise of 4%.

117.   Smith's final salary was approximately $ 40,560.

118.   Smith was not paid according to the County's salary schedules for the positions she was actually performing.

119.   Smith was not paid overtime in the positions she was actually performing.

120.   Smith had many earned, accrued hours of comp time for which she was never compensated.

17

121.   Smith believes her pay was discriminatory and in violation of Defendants' salary schedules.

122.   Defendants subjected Smith to unwelcome, severe and pervasive sexual harassment throughout her employment.

123.   Smith complained the only way she knew how.

124.   Defendants failed to investigate or remedy Smith's complaints.

125.   Smith's harassment was constant.

126.   Smith subjectively perceived the harassment as severe, because she sought comfort from family members.

127.   Smith's harassment was objectively severe or pervasive because it was a constant, hurling barrage of gender-related insults that were so humiliating and degrading that they unreasonably interfered with the terms and conditions of her employment.

128.   Glasscock retaliated against Smith after she rebuffed his advances and complained.

129.   Glasscock and the CCBOE violated the retaliation provisions of Title VII.

130.   The actions of Defendants complained of herein, individually or in conjunction with other employees of the CCBOE, constitute the official policy, practice, or custom of the CCBOE.

18

131.   Defendants also failed to promptly or adequately investigate other complaints of sexual harassment in the workplace.

132.   Defendants' conduct displayed deliberate indifference to Plaintiff's and other women's clearly-established statutory and constitutional civil rights to be free from discrimination and harassment.

133.   The violation of Plaintiff's and other women's rights resulted from Defendants' execution of its policies, customs, or official decisions, which are ongoing.

134.   Defendants failed to exercise proper care in the training, retention, and/or supervision of their respective employees, which proximately caused the injuries suffered by Plaintiff.

135.   Defendants' acts violated the Alabama laws of assault and battery, invasion of privacy, and tort of outrage.

136.   Defendants' conduct caused Smith to suffer significant financial loss and experience extreme mental and physical trauma, including, but not limited to, increased blood pressure, stress, mental anguish, loss of hair, and loss of sleep.

## COUNT I

## TITLE VII - SEX DISCRIMINATION
## AGAINST CHILTON COUNTY BOARD OF EDUCATION

137.   Plaintiff re-alleges the facts above as if fully set forth herein.

138.   Plaintiff is female and a member of a protected class.

19

139.   Defendant treated male employees more favorably in the terms, conditions, and pay in their employment.

140.   Defendant subjected Smith and other female employees to a hostile work environment.

141.   Plaintiff was compensated significantly less than similarly-situated male employees.

142.   Plaintiff suffered harm as a result of Defendant's unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT II

## TITLE VII - SEXUAL HARASSMENT
## AGAINST CHILTON COUNTY BOARD OF EDUCATION

143.  Plaintiff re-alleges the facts above as if fully set forth herein.

144.  Plaintiff suffered *quid pro quo* sexual harassment in terms of compensation, promotions, and her ability to remain employed.

145.  Plaintiff suffered adverse employment actions at the hands of a harassing supervisor.

146.  Plaintiff's supervisor used apparent or actual authority in an attempt to extort sexual consideration from her.

147.  Plaintiff's supervisor used the means furnished by the employer to accomplish the prohibited purpose.

148.  Plaintiff's supervisor acted within the scope of actual or apparent authority to hire, fire, discipline, transfer, demote, promote, and set wages.

149.  Plaintiff endured a constant barrage of sex-related comments from the supervisor throughout her employment.

150.  Plaintiff's supervisor touched and attempted to touch Plaintiff against her wishes.

151.  Plaintiff complained about the harassment.

152.  Defendant failed to promptly or adequately investigate or remedy the harassment.

21

153.   Plaintiff suffered from sex harassment because (1) the combination of the employer's knowledge and inaction demonstrated negligence or the adoption of the offending conduct; (2) the individual employees charged with harassment or discrimination were sufficiently high in the management hierarchy of the company so as to impute liability to the employer; or (3) the individuals caused a discriminatory, tangible employment action.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT III

## TITLE VII – RETALIATION
## AGAINST CHILTON COUNTY BOARD OF EDUCATION

154.  Plaintiff re-alleges the facts above as if fully set forth herein.

155.  Plaintiff rebuffed her supervisor's unwelcomed sexual advances.

156.  Plaintiff complained of discrimination and harassment.

157.  Defendant subjected Plaintiff to a retaliatory hostile environment.

158.  Defendant failed to promote or properly compensate Plaintiff because Plaintiff engaged in protected activity.

159.  Defendant terminated Plaintiff's employment because Plaintiff engaged in protected activity.

160.  Defendant's retaliation was within close temporal proximity of her protected activity.

161.  Defendant's alleged reasons for its adverse actions toward Plaintiff are pretextual.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

23

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Title VII of the Civil Rights Acts of 1964 and 1991, as amended;

c)    Award such other and further relief as this Court deems just and proper.

## COUNT IV

## EQUAL PAY ACT
## AGAINST ALL DEFENDANTS

162.   Plaintiff re-alleges the facts above as if fully set forth herein.

163.   Plaintiff is female and a member of a protected class.

164.   Defendant compensated Plaintiff less than her male counterparts in violation of the Equal Pay Act of 1963.

165.   Defendant compensated Plaintiff less than male employees in positions requiring equal skills, effort, and responsibility under similar working conditions.

166.   Defendant knowingly assigned Plaintiff to work as an Assistant Superintendent without offering her the corresponding pay.

167.   Defendant's acts were willful.

168.   Defendant acted with reckless disregard.

169.   Defendant's violation of the Act caused Plaintiff to suffer financial

24

harm.

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the Equal Pay Act;

c)    Award such other and further relief as this Court deems just and proper.

COUNT V
FAIR LABOR STANDARDS ACT
AGAINST ALL DEFENDANTS

170.  Plaintiff re-alleges the facts above as if fully set forth herein.

171.  Defendant failed to pay Plaintiff overtime for work performed in excess of 40 hours per week.

172.  Defendant failed to pay Plaintiff overtime at her correct rate of pay.

173.  Defendant's acts were willful.

174.  Defendant acted with reckless disregard.

175.  Defendant's violation of the Act caused Plaintiff to suffer financial

harm.

WHEREFORE, Plaintiff requests the following relief:

a)     Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest, and attorneys' fees;

b)     Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the Fair Labor Standards Act;

c)     Award such other and further relief as this Court deems just and proper.

## COUNT VI
## SECTION 1983 – FOURTEENTH AMENDMENT (EQUAL PROTECTION) AGAINST ALL DEFENDANTS

176.   Plaintiff re-alleges the facts above as if fully set forth herein.

177.   Plaintiff is female.

178.   Under color of law, Defendants denied Plaintiff equal protection to be free from discrimination and harassment in the workplace.

179.   Defendants were deliberately indifferent to Plaintiff's clearly established Constitutional and statutory rights.

180.   The violation of Plaintiff's and other women's rights resulted from

26

Defendants' execution of its policies, customs, or official decisions, which are ongoing.

181.    Plaintiff suffered harm as a result of Defendants' unlawful actions.

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Section 1983;

c)    Award such other and further relief as this Court deems just and proper.

## COUNT VII

## BREACH OF CONTRACT, QUANTUM MERUIT, UNJUST ENRICHMENT

182.    Plaintiff re-alleges the facts above as if fully set forth herein.

183.    Defendant breached its contract of paying scheduled wages for the jobs Plaintiff actually performed.

184.    Defendants hired Plaintiff as a Secretary at $39,000 per year.

185.    Defendants immediately asked Plaintiff to perform functions above

and beyond the secretary role.

186.   Rather than compensate Plaintiff for the duties she was actually performing, Defendant continued paying Plaintiff at the secretary rate.

187.   Defendants failed to compensate Plaintiff for her duties as Payroll Clerk, Board Clerk, and the Assistant Superintendent position.

188.   Defendant received the benefit of Plaintiff's services in these roles, yet did not compensate Plaintiff for the reasonable value of her services.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Alabama law;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT VIII

### ALABAMA CODE SECTION 16-22-10
### DEFENDANT CHILTON COUNTY BOARD OF EDUCATION

189.   Plaintiff re-alleges the facts above as if fully set forth herein.

28

190.   Defendant has a duty to establish salary schedules for each class and type of job.

191.   Defendant failed to establish a proper salary schedule for one or more jobs Plaintiff was working.

192.   Defendant failed to properly compensate Plaintiff under its existing salary schedules.

193.   Defendant retaliated against Plaintiff when she complained about not being paid in accordance with the existing salary schedules.

194.   Plaintiff suffered harm from Defendant's unlawful actions.

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, liquidated damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate Alabama law;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT IX

### INVASION OF PRIVACY
### AGAINST DEFENDANT GLASSCOCK

195.   Plaintiff re-alleges the facts above as if fully set forth herein.

196.   Defendant Glasscock touched Plaintiff in an unwelcome manner that was intrusive, unwelcomed, and sexual given her environment of sexual harassment.

197.   Defendant, the senior official on whom Plaintiff depended for her job, violated Plaintiff's emotional sanctum with his intrusive, inappropriate behavior in the workplace.

198.   The intrusion was so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation.

199.   The intrusion caused Plaintiff mental and physical harm.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert

therewith from continuing to violate the state laws asserted;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT X

## ASSAULT AND BATTERY
## AGAINST DEFENDANT GLASSCOCK

200.   Plaintiff re-alleges the facts above as if fully set forth herein.

201.   Plaintiff suffered from persistent harassment of an extreme nature by her direct supervisor, Superintendent Glasscock.

202.   Defendant Glasscock touched Plaintiff in a manner that was unwelcomed by hugging her against her will.

203.   The touching was intentional, gratuitous, and conducted with sexual overtones.

204.   Plaintiff's fear and/or apprehension of the unwelcomed touching, and the touching, itself, constitute assault and battery.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents,

31

successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)   Award such other and further relief as this Court deems just and proper.

## COUNT XI

### TORT OF OUTRAGE
### AGAINST ALL DEFENDANTS

205.  Plaintiff re-alleges the facts above as if fully set forth herein.

206.  Defendants subjected Plaintiff to egregious sexual harassment.

207.  Defendants' conduct was intentional or reckless.

208.  Defendants' conduct was extreme and outrageous.

209.  Defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it.

WHEREFORE, Plaintiff requests the following relief:

a)   Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)   Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)        Award such other and further relief as this Court deems just and proper.

## COUNT XII

### NEGLIGENT TRAINING, SUPERVISION, AND RETENTION AGAINST CHILTON COUNTY BOARD OF EDUCATION

210.   Plaintiff re-alleges the facts above as if fully set forth herein.

211.   This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton training, supervision and retention of Defendant's employees.

212.   Defendant had a duty to provide a reasonably safe, non-discriminatory, and non-hostile work environment to Plaintiff.

213.   Defendant CCBOE failed to train, discipline, or terminate Defendant Glasscock.

214.   Defendant CCBOE failed to train management and employees on policies prohibiting discrimination and harassment.

215.   Defendant CCBOE failed to administer policies against discrimination, harassment, equal pay, overtime, and violations of Alabama law in the workplace.

216.   Defendant's failures created a hostile, unsafe working environment for Plaintiff.

217.   Plaintiff suffered harm as a result of Defendant's unlawful conduct.

33

WHEREFORE, Plaintiff requests the following relief:

a)    Award Plaintiff appropriate declaratory relief, equitable relief, lost wages, lost benefits, front pay, back pay, injunctive relief, compensatory and punitive damages, costs, interest, and attorneys' fees;

b)    Grant a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert therewith from continuing to violate the state laws asserted;

c)    Award such other and further relief as this Court deems just and proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests all of the relief set forth herein.

### PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Sonya C. Edwards (ASB-8848-S73E)
Attorney for Plaintiff Allison P. Smith

**OF COUNSEL:**

EDWARDS LAW, LLC
3 Office Park Circle
Suite 230
Birmingham, Alabama 35223
(205) 871-7567
sonya@sonyaedwardslaw.com