IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALLISON P. SMITH,                  )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )      Civ. Act. No.: 2:18-cv-870-ECM
                                   )              (WO)
TOMMY GLASSCOCK,                   )
                                   )
        Defendants.                )

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion for summary judgment filed on January 6, 2020, by Defendant Tommy Glasscock ("Glasscock"). (Doc. 38).

The Plaintiff, Allison Smith ("Smith"), originally filed a complaint in this case on October 9, 2018, bringing claims against the Chilton County Board of Education, Glasscock, and Chilton County Board of Education members Lori Patterson, Linda Hand, Joe Mims, Keith Moore, Pam Price, James Shannon, and Curtis Smith. (Doc. 1).  The parties subsequently filed a Joint Stipulation of Pro Tanto Dismissal as to the claims against the Chilton County Board of Education, Lori Patterson, Linda Hand, Joe Mims, Keith Moore, Pam Price, James Shannon, and Curtis Smith. (Doc. 36).  The only Defendant remaining after dismissal, Glasscock, filed the motion for summary judgment which is currently pending.

Upon consideration of the briefs and applicable law, and for the reasons that follow, the motion for summary judgment is due to be GRANTED in part and DENIED in part.

## I.  JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  Personal jurisdiction and venue are uncontested.

## II.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED.R.CIV.P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value."  *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case."  *Id.*  The burden

then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

### III. FACTS

The facts, viewed in a light most favorable to the non-movant, are as follows:

Smith was employed by the Chilton County Board of Education from February 2015 to April 2017. She began as a secretary to Glasscock, the Superintendent of the Chilton County Board of Education. In his position, Glasscock made recommendations regarding personnel actions to the Board of Education.

In June 2016, Chilton County Board of Education Personnel Director Walter Fenn resigned. Smith has testified that although her pay did not change, she began performing the job duties of the Personnel Director/Assistant Superintendent. (Doc. 39-1 at 185: 11-21). Smith requested a raise and requested overtime pay and her requests were denied by Glasscock.

In addition to her claims regarding pay and overtime, Smith provides evidence to support claims based on her working environment.[1] Smith states in her declaration that Glasscock gave her hugs, which were a "full frontal, tight embrace, face to face, that would last 5-10 seconds," that had sexual overtones, and that deeply offended and embarrassed her. (Doc. 42-1 at ¶¶36- 40). She testifies in her deposition that during the time she worked there Glasscock hugged her three or four times. (Doc. 39-1 at 119: 7-14). The last time

---

[1] The Court recognizes that Glasscock denies that this conduct occurred. Smith's evidence, however, is sufficient to create a question of fact as to whether the conduct occurred, so the Court will consider Smith's version of the events which is supported by evidence in ruling on the motion for summary judgment. *See Jefferson*, 891 F.3d at 924–25.

that Glasscock tried to hug Smith, he said that he loved her, and Smith pushed him away as he tried forcefully to pull her in. (Doc. 42-1 at ¶¶43, 44).

Smith has testified in a deposition that Glasscock made various comments which she characterizes as being of a sexual nature.  Smith states in a declaration that Glasscock said that he would give her a raise but that first she had to "meet his needs."  (Doc. 42-1 at ¶25).  She states that she rebuffed Glasscock's sexual advances. (Doc. 42-1 at ¶26).  Smith states that Glasscock called her into his office and told her she was one of the few people in his life that he felt this way about and would protect her, but she had to meet his needs. (Doc. 39-1 at 74: 2-19).  She states that she understood this to be a sexual proposition and says that it was made in an aggressive and angry way. (Doc. 39-1 at 75: 1-13).  She also states that Glasscock told her he felt like they were getting a divorce and that he did not "need to fuck you." (Doc. 39-1 at 93:15-17).   Smith testifies in her deposition that Glasscock asked her to get on her hands and knees under his desk to change out the paper in her printer and commented on what it looked like with her being under the table. (Doc. 39-1 at 189: 9-20).  Glasscock also told Smith that other employees were jealous of them and their relationship. (Doc. 42-2 at 108).  Smith states that Glasscock said he wanted to show her children's teachers "who [Smith] belonged to."  (Doc. 42-2 at 107).

Smith also provides evidence of comments or conduct by Glasscock regarding other people and employees.  She states that Glasscock stood in her office and told Smith that another female employee was "just embarrassed because she had tried to give him a blow job at some point." (Doc. 39-1 at 42: 1-13).  Smith also states that Glasscock stood in her office and discussed a sexual relationship he had had with a friend of Smith's and the

friend's mother. (Doc. 39-1 at 60: 3-18).  Glasscock also referred to a female subordinate who gave him a "peep show" and told Smith that a Board member wore no panties.  Smith provides evidence that Glasscock came into Smith's office to point out women vendors who were getting out of their cars because he liked their short skirts or low-cut blouses. (Doc. 39-1 at 64: 22- 65: 18). Smith states that Glasscock came into her office and showed her a video of a male monkey engaged in a sexual act. (Doc. 39-1 at 67: 20-68: 5). According to Smith's testimony, Glasscock also made suggestive comments about a student.  (Doc. 42-2 at 109).  Glasscock also told Smith about sexual relationships of a previous Superintendent.   (Doc. 4-2 at 107).   Smith further testifies to conduct by Glasscock including telling her about an employee who wanted to have sex with him and that he showed her a text message from an employee about her breasts. (Doc. 39-2 at 234:6-236:8).

Smith also provides evidence of aggressive or angry behavior by Glasscock which she claims contributed to a hostile working environment.  She states that in the summer of 2016 he moved her from the front office to the back office where it was more private and that he began yelling at her more. (Doc. 39-1 at 189: 21-190: 11).  Smith also states that Glasscock made her cry and she witnessed Glasscock make a Board member and other women cry. (Doc. 42-1 ¶¶49, 50).  She states that Glasscock got angry with her over who cut her hair. (Doc. 42-2 at 108).

Ultimately, Smith states, Glasscock forced Smith to resign or be fired and told her that if she said a word about his conduct, he would see to it that she never worked in Chilton County again. (Doc. 42-1 at ¶54).

## IV. DISCUSSION

Glasscock has moved for summary judgment as to the federal and state law claims against him. The Court begins with the federal claims.

A.  Federal Claims

1.  Equal Pay Act and Fair Labor Standards Act

Glasscock moves for summary judgment as to the claims under both the Equal Pay Act ("EPA") and Fair Labor Standards Act ("FLSA") on the same grounds; namely, that a claim cannot be stated against a public official in his individual capacity under those statutes and that there is no claim remaining in this case under either statute against Glasscock in his official capacity.

With respect to the individual-capacity claims, the law in the Eleventh Circuit is settled.  The Eleventh Circuit has clearly held that precedent "establishes as the law of this circuit that a public official sued in his individual capacity is not an 'employer' subject to individual liability under the FLSA," and that the "Equal Pay Act is simply an extension of the FLSA and incorporates the FLSA's definition of 'employer.'" *Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)).

Smith contends that *Welch* and *Wascura* were wrong decided, citing *Hafer v. Melo*, 502 U.S. 21 (1991). (Doc. 42 at 38).   *Hafer*, however, is a case decided before *Welch* and *Wascura*.  *See Evans v. Georgia Reg'l Hosp*., 850 F.3d 1248, 1255 (11th Cir. 2017) (stating that the Eleventh Circuit is "bound to follow a binding precedent in this Circuit unless and until it is overruled by this court *en banc* or by the Supreme Court.").   Under binding

Eleventh Circuit precedent, therefore, Glasscock in his individual capacity is not subject to suit under the EPA or FLSA and summary judgment is due to be GRANTED as to those claims against Glasscock. *See Lee v. City of Walthourville*, 2019 WL 339631, at *3 (S.D. Ga. 2019)(finding that Eleventh Circuit precedent is binding that a public official in his individual capacity is not an employer under the FLSA).

With regard to the official-capacity claims, Glasscock contends that because a claim against him in his official capacity is the same thing as a claim against the Board of Education, and because Smith released her claims against the Board of Education, there is no official capacity claim remaining against Glasscock.  Smith responds that the release of the claims against the Board of Education did not include claims against Glasscock and, therefore, she can proceed against Glasscock on claims brought pursuant to the FLSA and EPA. Smith argues that courts generally do not to allow claims to go forward against an entity as well as an official in an official capacity because that would be potentially confusing to a jury, but argues that this case is distinct because the entity is no longer a party in the case.

An official capacity claim is the same thing as a claim brought directly against the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  That is "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In this case, the claims against the entity, which are the same as the claims against the official in his official capacity, *Will*, 491 U.S. at 71, have been settled and released. The claims against Glasscock in his official capacity, therefore, are no longer a

part of this case.   Furthermore, it is undisputed that Glasscock stopped being the Superintendent of the Chilton County Board of Education and was hired by the State Department of Education in August, 2018.  (Doc. 39 at 2 & Doc. 39-2 at 19: 11-17).  There is no authority for enjoining a former state official.  *See Spurrier v. Bd. of Trustees of the Univ. of Alabama*, 2016 WL 4137971, at *5 (N.D. Ala. Aug. 4, 2016).  Accordingly, the Motion for Summary Judgment is due to be GRANTED as to the EPA and FLSA claims against Glasscock in his official capacity.

2.   Equal Protection

In count VI of the complaint, Smith brings a §1983 claim for denial of equal protection against Glasscock.  Glasscock moves for summary judgment on this claim on the ground that Glasscock's actions were taken as a private individual and were not state actions, so there can be no violation of Equal Protection by a state actor.  Glasscock argues that Smith has not shown that conduct by Glasscock was in any way dependent upon or furthered by state authority and that even though he was her supervisor, the acts she says he committed were not different than harassment in a private business. Glasscock further argues that he was acting outside of any discretionary authority given him by state law or Chilton County Board of Education policy.

Smith responds that Glasscock had supervisory authority over her and that this case is to be distinguished from cases relied on by Glasscock wherein harassment was perpetrated by co-workers without supervisory authority.  Smith states in her declaration that Glasscock promised to give her a raise, but said that first she would have to meet his needs. (Doc. 42-1 at ¶25).  She states that she was "afraid to tell Glasscock no" for fear of

losing her job. (Doc. 42-1 at ¶42).  She also testifies in her deposition that Glasscock called her into his office and told her that she was one of the "few people in his life that he felt this way about and that he would protect [her], but [she] would have to meet his needs," which she described as said in an aggressive, angry way and which she perceived as a sexual demand.  (Doc. 39-1 at 74: 2-75:13). Smith also states that Glasscock told her she had to resign and that if she reported his conduct, she would never work in Chilton County again. (Doc. 42-1 at ¶54).  Smith states that Glasscock gave her unwanted hugs in the workplace that deeply offended and embarrassed her. (Doc. 42-1 at ¶¶36, 37).  Smith further testifies in her deposition about incidents which took place in her office, such as a time when vendors came to the office to talk about services, Glasscock showed Smith their short skirts or low-cut blouses. (Doc. 39-1 at 65: 1-16).  At one point, she requested that Glasscock move her to a different position, and she was offended when he said he felt "like we are getting a divorce. I don't need to fuck you."  (Doc. 39-1 at 93: 12-17).  She further testified that objectionable conduct occurred more often after Glasscock moved her from the front office to the back office where it was more private. (Doc. 39-1 at 190: 5-11).

"The traditional definition of acting under color of state law requires that the defendant in a [section] 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (quotation omitted).  The Eleventh Circuit has cautioned that whether a government employee is acting under color of law requires that courts engage in line drawing. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295 (11th Cir. 2001).  "The dispositive issue is whether the official was acting pursuant

to the power he/she possessed by state authority or acting only as a private individual." *Myers*, 713 F.3d at 1330 (citing *Griffin*, 261 F.3d 1303).  A §1983 defendant who abuses the power and authority given to her by the state acts under color of state law. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1268 (11th Cir. 2012).

In *Griffin*, the Eleventh Circuit examined the facts surrounding a sexual assault of an employee in evaluating whether her supervisor, a state employee, acted under color of state law.  261 F.3d at 1305 (holding "Neal's official interactions with Griffin as her boss during and after work hours, his continual sexual harassment of her during those interactions, and the ultimate sexual assault constitute an indivisible, ongoing series of events").  The court found it significant that the defendant utilized his authority as City Manager to harass and intimidate the plaintiff at the workplace by insisting she owed him something for "all of the things" that he did for her, including giving her a raise; by threatening her with her job if she did not do certain things for him; by touching her inappropriately and continually requesting hugs; and by asking her intimate questions. *Id.* The court concluded that it was within that context of "continual exploitation of and leverage of his authority over Griffin that we find a sufficient nexus between his duties and obligations as City Manager and Griffin's boss and the abuse of that authority to facilitate his harassment and ultimate sexual assault of her." *Id.*  The court explained that this was not a situation in which the performance of the state official's duties merely facilitated the meeting of or development of a relationship, but rather a situation in which the official used his authority as the employee's boss to harass and humiliate her during and after work hours. *Id.* at 1307.  While *Griffin* is distinct from this case in that it involved a sexual assault

10

outside of the workplace, the analysis applies in this case because the Eleventh Circuit examined conduct within the workplace and concluded that the assault outside of the workplace was a continuation of action under color of state law in the workplace. *Id.* at 1306.

In this case, although Glasscock disputes Smith's evidence as to his conduct, creating a question of fact as to that conduct, Smith's evidence supports a finding that her supervisor, Glasscock, engaged in conduct very similar to the conduct in *Griffin*, and thereby used his authority under state law to facilitate his harassment of Smith by telling Smith he would help her with a raise and would protect her if she met his needs; threatening her with her job if she complained; exerting control over placement of her desk which she states allowed him to increase his angry behavior; touching her in an unwanted manner by hugging her; and making inappropriate suggestive remarks. This Court concludes, based on Smith's evidence viewed in a light most favorable to the non-movant, that this is not a situation in which Glasscock merely used his position to facilitate a meeting or development of a relationship, but instead there is sufficient evidence to support a finding that Glasscock abused the authority given to him by the State to harass Smith. *See Butler*, 685 F.3d at 1268; *Griffin*, 261 F.3d at 1306. Because the state-actor argument is the only basis for summary judgment advanced by Glasscock as to the Equal Protection claim, the motion for summary judgment is due to be DENIED as to the claim for violation of Equal Protection against Glasscock in his individual capacity.

B.  State Law Claims

1.  Breach of Contract, Quantum Meruit, Unjust Enrichment

In count VII of the complaint, Smith brings one count asserting three related claims: breach of contract, quantum meruit, and unjust enrichment.  In her brief, Smith states that Glasscock, as Superintendent and Chief Executive Officer of the Chilton County Board of Education, "breached Smith's employment contract with the Board."  (Doc. 42 at 43).  In another part of her argument, Smith states that Glasscock's assertions that he was not Smith's employer are unsupported factually and under the law.  (Doc. 42 at 45). Therefore, it is clear that she is not proceeding under a tortious interference theory, but instead contends that Glasscock, as Superintendent, was a party to the contractual relationship and/or owed compensation to Smith under her related theories.

Under Alabama law, a superintendent only makes recommendations to a board of education regarding personnel matters.  Ala. Code §16-8-23 ("a county board of education appoints, upon recommendation of the superintendent, all principals, teachers, clerical, and professional assistants.").  In *Board of Sch. Comm'rs of Mobile Cty. v. Weaver*, 99 So. 3d 1210, 1221 (Ala. 2012), a plaintiff sought reinstatement to a position with a board of education and named the board and the superintendent as defendants. The court explained that the superintendent did not have the authority under Ala. Code §16-8-23 to grant the relief the plaintiff requested. *Id.*  Furthermore, "agents cannot be held liable for a principal's breach of contract."  *Harrell v. Reynolds Metals Co*., 495 So. 2d 1381, 1389 (Ala. 1986).

Under Alabama law, therefore, Glasscock does not have the authority to give Smith the relief she seeks.  In addition, as earlier noted, her federal and state claims against the

Board of Education and the Board members have been settled and Smith has released all claims against the Board, which includes claims against Glasscock in his official capacity. Finally, even if Glasscock had the authority, he is no longer the Superintendent, and so is not in a position to enforce a contract or provide equitable relief on behalf of the Board of Education. Accordingly, summary judgment is due to be GRANTED as to Glasscock on the breach of contract, quantum meruit, and unjust enrichment claims against him in his official capacity.

It does not appear that Smith contends that Glasscock individually had a contractual relationship with her or personally owed her money under a quantum meruit or unjustment enrichment theory. To the extent that Smith brings individual-capacity claims against Glasscock in count VII, however, Glasscock argues that he is entitled to summary judgment on the breach of contract, quantum claims, and unjust enrichment claims because he had no contractual relationship with Smith, and any claim arising from any contractual relationship or the withholding of compensation would be against her employer, the Board of Education.

The Court agrees that there is no evidence of a benefit to Glasscock individually. Under state law, the employment contracts are between employees and the boards of education, not the superintendent. *See* Ala. Code §16-8-23. Similarly, unjust enrichment and quantum meruit are equitable remedies arising from a contractual relationship. *See American Family Care, Inc. v. Fox*, 642 So.2d 486, 488 (Ala.Civ.App.1994) ("Under the doctrine of quasi-contract, the law implies a contract, based upon the principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit

13

provided at the detriment of another. . .").  To the extent that count VII of the complaint is brought against Glasscock in his individual capacity, therefore, summary judgment is due to be GRANTED.

    2.  Invasion of Privacy

In Alabama, "the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maintenance Services, Inc*., 435 So.2d 705, 708 (Ala.1983).  Smith relies on a theory of intrusion upon the plaintiff's physical solitude or seclusion.

To succeed on a claim of intrusion upon seclusion "relating to sexual harassment, a plaintiff must show: (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation." *Ex parte Atmore*, 719 So.2d 1190, 1194 (Ala.1998).  "While conduct needed to support an invasion of privacy claim need not be 'extreme and outrageous,' in cases where a viable claim for invasion of privacy exists, the defendant's behavior frequently approaches such a degree." *Brassfield v. Jack McLendon Furniture, Inc*., 953 F. Supp. 1438, 1456 (M.D. Ala. 1996).

Glasscock moves for summary judgment on the invasion of privacy claim arguing that Smith's testimony that Glasscock made comments to her about other women, not Smith herself; made comments that were not overtly of a sexual nature but which Smith

perceived as sexually suggestive; and hugged her on three or four occasions, cannot support a claim of invasion of privacy because the conduct does not rise to the level of proof required to present a triable issue.

To sustain a wrongful-intrusion claim, "'[t]here must be something in the nature of prying and intrusion,' . . . even if the intrusion is only into one's 'emotional sanctum.'" *Thornton v. Flavor House Prod., Inc*., 2008 WL 5328492, at *16 (M.D. Ala. 2008) (citations omitted). For example, an invasion may be a physical intrusion if a defendant forces himself into the plaintiff's room, listens in on private affairs, or investigates or examines private concerns. *See McIsaac v. WZEW-FM Corp*., 495 So. 2d 649, 652 (Ala. 1986). Consequently, this Court is persuaded that only the instances of conduct which are considered intrusive should be considered in evaluating an invasion of privacy claim. *Thornton*, 2008 WL 5328492, at *16. Conduct about the speaker's own personal life are not intrusive and should not be considered part of the claim. *Id.*

In this case, there is evidence of comments about Smith needing to meet Glasscock's needs which may be considered as intruding on the emotional sanctum. But these sexual propositions are not sufficiently intrusive under Alabama law where "the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability." *McIsaac*, 495 So. 2d at 652 (citation omitted). Even when the arguably sexual propositions are combined with evidence of comments about the relationship between Smith and Glasscock and the evidence of hugs, only the last of which was resisted by Smith, the Court cannot conclude that the evidence in this case falls within the conduct which has been recognized under Alabama law as "sufficient to cause outrage,

mental suffering, shame or humiliation to a person of ordinary sensibilities." *Thornton*, 2008 WL 5328492, at *17. Summary judgment is, therefore, due to be granted as to the invasion of privacy claim.

 3. Assault and Battery

 "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.' " *Harper v. Winston Cty*, 892 So.2d 346, 353 (Ala. 2004) (citation omitted). It is well-established that "[a]n actual injury to the body is not a necessary element of a civil assault and battery." *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986).

 Glasscock moves for summary judgment relying on *Murdoch v. Medjet Assistance*, 294 F. Supp. 3d 1276-77 (N.D. Ala. 2018), in which the court granted summary judgment to the defendant on an assault claim where there was no evidence that that the plaintiff "verbally objected to Mr. Berger's touchings when they occurred (or shortly thereafter)" or any "evidence of a touching that had substantial sexual overtones." Glasscock cites to Smith's deposition and argues that because there were no sexual comments during the hugs and because she hugged Glasscock back, there is no evidence of assault.

 The Court has reviewed the portion of Smith's deposition in which she discusses the hugs, as indicated by Glasscock's citation to a page within that discussion. Smith testified that Glasscock hugged her and she "hugged him back, except for the last time." (Doc. 39-1 at 118: 1-2). Smith also testified that the last time Glasscock hugged her, he told her that he loved her (doc. 39-1 at 118: 6-9) and she pushed away as he tried to

forcefully pull her in.  (Doc. 39-1 at 123: 14-18) (Doc. 42-1 at ¶44).  Smith also testified that she may have reported Glasscock's hugs to a person named Ms. White and to Allie Ellison. (Doc. 39-1 at 122: 18-22).  The facts in this case, therefore, are distinct from those in *Murdoch*.

In *Ex parte Atmore Community Hosp*., 719 So.2d 1190, 1194 (Ala.1998), the court reversed summary judgment to the defendant on a claim of battery where the plaintiff "presented evidence indicating that [defendant] touched her waist, rubbed against her when passing her in the hall, poked her in the armpits near the breast area, and touched her leg." The plaintiff "also presented evidence indicating that each of these touchings was intentional, was conducted with sexual overtones, and was unwelcome." *Id.*

In this case even if there is no evidence that the first hugs were unwanted, there is evidence that the final hug was unwanted and that Smith pushed away, and there is evidence which could tend to show that there was a sexual overtone in that Glasscock said that he loved Smith during that hug.  Accordingly, there is sufficient evidence to create a triable issue as to assault and battery and summary judgment will be DENIED as to that claim against Glasscock in his individual capacity.

4. Intentional Infliction of Emotional Distress

To provide an intentional infliction of emotional distress, a plaintiff must establish that, "(1) the defendant ... intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act [was] extreme and outrageous; (3) the act ... caused plaintiff['s] distress; and (4) plaintiff ['s] emotional distress [was] so severe that no reasonable person could be expected to endure it." *K.M. v. Ala. Dep't of*

*Youth Servs.*, 360 F.Supp.2d 1253, 1259 (M.D. Ala. 2005) (citing *Harrelson v. R.J.*, 882 So.2d 317, 322 (Ala.2003)).  The tort does not recognize recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Wilborn*, 720 F. Supp. 2d at 1311–12 (citation omitted).

Alabama caselaw has recognized three categories of an outrageous conduct claim: 1) cases having to do with wrongful conduct in the context of family burials, 2) heavy-handed insurance settlements, and 3) egregious sexual harassment. *Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000).  The Alabama Supreme Court has clarified that the tort is not limited to those three categories, but has also reiterated that the conduct must be "so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017).

In her brief, Smith argues that because Glasscock had the responsibility to implement federal laws prohibiting discrimination and harassment, Glasscock's outrageous discrimination was in contravention of public policy, which is considered by Alabama courts in evaluating intentional infliction of emotional distress claims.  In support of her argument she cites *Powell v. Harsco Metal*, 2013 WL 3242759, at *9 (N.D. Ala. 2013), which in turn relies on *Lees v. Sea Breeze Health Care Ctr.*, 391 F. Supp. 2d 1103, 1108 (S.D. Ala 2005).

In *Lees*, the court explained that under Alabama law, an employer cannot treat an employee in an extreme and outrageous manner, but to constitute a tort, the outrageous conduct must exceed merely discharging an employee at will and the termination must

18

contravene public policy. *Id.* at 1107.  The court pointed to Alabama cases recognizing a contravention of public policy when a plaintiff was retaliated against for exercising the right to marry and when a plaintiff was terminated because of pregnancy.  *Id.*  In *Lees*, the plaintiff claimed that he was harassed on the basis of his having enlisted in the U.S. Air Force Reserves, which the court found was in contravention of public policy. *Id.*

This Court need not address the scope of an outrageous conduct theory based on the contravention of public policy as applied in this case, because the conduct in this case is distinct from that discussed in *Lees* and actually, if sufficient to meet the standard, falls within a category of conduct which has been recognized; namely, egregious sexual harassment.[2] *See Powell v. Harsco Metal*, 2013 WL 3242759, at *10 (N.D. Ala. 2013) (finding that no claim was stated where the allegations were not allegations of conduct which was "extreme and outrageous," "like those which have been recognized in Alabama in the past" and there was no allegation of conduct which contravenes public policy); *see also Shumate v. Selma City Bd. of Educ.*, 928 F. Supp. 2d 1302, 1330 (S.D. Ala. 2013) (distinguishing *Lees* and granting summary judgment where the facts do not fit the limited categories of outrage previously enumerated), *on reconsideration in part*, 2013 WL 5758699 (S.D. Ala. Oct. 24, 2013), *aff'd*, 581 F. App'x 740 (11th Cir. 2014).  In other words, this Court need not analyze this case under a separate public-policy category because the Alabama Supreme Court already has established a standard for evaluating

---

[2]    The basis for Smith's argument that Glasscock engaged in gender discrimination in contravention of public policy is unclear, but appears to arise from her Equal Protection violation theory, which is premised on sexual harassment.

outrageous conduct in the context presented in this case:  egregious sexual harassment.  *See Potts*, 771 So.2d at 465; *See also McCreight v. AuburnBank*, 2020 WL 1061675, at *2 (M.D. Ala. 2020)  (declining an extension of the tort of outrageous conduct to a termination which is a violation of public policy.)

The question before this Court, therefore, is whether Smith has created a genuine issue of fact as to whether Glasscock engaged in egregious sexual harassment.

Considering all of the evidence presented in a light most favorable to Smith, the evidence directly involving Smith includes physical touching in the form of three or four hugs, only one of which was resisted; comments that Smith would have to meet Glasscock's needs; comments about what other people would think about her being under Glasscock's desk; comments about what people thought of their relationship; and a comment that Glasscock wanted teachers to know who Smith belonged to.  Other evidence of Glasscock's behavior relates to others, such comments on other women's appearance, descriptions of sexual activity by Glasscock and other employees, a graphic video, and a text about another woman's breasts.

Conduct similar to the conduct in this case has been found not to meet the standard of egregious sexual harassment.  *See., e.g.*, *Turner v. Hayes*, 719 So. 2d 1184, 1187 (Ala.Civ.App.1997)(woman who claimed her supervisor sexually harassed her by touching her under the armpits, near her breasts, on her leg, trying to look up her skirt, making sexual innuendo, and touching his genital area in her presence, had not stated facts so "flagrantly egregious" as to state a claim for outrage), *rev'd on other grounds Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998); *Stancombe v. New Process Steel LP*, 652 F. App'x

729, 739 (11th Cir. 2016) (analyzing an Alabama case holding that no extreme or outrageous conduct occurred where the defendant-supervisor stated that he wanted to have an affair with the plaintiff, attempted to kiss her, made suggestive remarks, touched her and put his arm around her, and then terminated her employment because she had refused his advances); *McIsaac*, 495 So. 2d at 650-51 (no liability for outrageous conduct where employer told plaintiff about his affair, asked the employee to be available, tried to kiss her, looked at her in an inappropriate manner, touched her arm, and tried to fire her for refusing his advances).  The conduct in this case does not rise to the level of extreme and outrageous conduct so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society. *See Wilson*, 266 So. at 677. Accordingly, summary judgment is due to be GRANTED as to Glasscock on the outrageous conduct claim.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

A.  The motion for summary judgment (doc. 38) is GRANTED in part and DENIED in part as follows:

1.  The Motion is GRANTED and judgment is entered in favor of Defendant Glasscock in his official and individual capacities against Plaintiff Smith on the federal FLSA and EPA claims and the state law breach of contract, quantum meruit, unjust enrichment, invasion of privacy, and outrage claims, and against Glasscock in his official capacity for violation of Equal Protection and the state law claim of assault and battery.

2.  The Motion is DENIED as to the federal claim against Glasscock in his individual capacity for violation of Equal Protection on the basis of sexual harassment and as to the state-law claim against Glasscock in his individual capacity on the claim of assault and battery.

B.  The Court having ruled on the Motion for Summary Judgment, the parties Joint Motion to Stay Scheduling Order Deadlines (doc. 47) is DENIED without prejudice to being refiled if the parties need an extension of time for some deadlines for a different reason.

Done this 8th day of May, 2020.


/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE